IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CENTURY SURETY COMPANY,     §
         §
       *Plaintiff,*     §         5:23-CV-01215-XR-RBF
         §
vs.          §
         §
EC & SM GUERRA, LLC,     §
         §
       *Defendant.*     §
         §
         §

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns Plaintiff's Motion for Summary Judgment. *See* Dkt. Nos. 19 (Mot.), 22 (Resp.), 23 (Reply). All pretrial matters in this action have been referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 15. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, Plaintiff's Motion for Summary Judgment, Dkt. No. 19. should be **GRANTED**.

### Factual and Procedural Background

This is an insurance dispute. Defendant EC & SM Guerra, LLC d/b/a Guardian Angel Child Development Center ("Guardian"), held a fire insurance policy with Plaintiff Century Surety Company ("Century") for a San Antonio property. *See* Mot. Ex. A at 41 (Policy number CCP999406). The policy limited coverage at $635,220 for the building. Dkt. No. Mot. Ex. E. It also included coverage for business personal property and debris removal, with policy limits of

$52,000 and $25,000 respectively. *See id.* at 10, 12, & 17. During the policy period in 2022, a fire damaged the property. Century paid out under the policy $660,220 for the structure and debris-removal coverage as well as an additional $52,000, thereby meeting the property limit under the policy. *See* Mot. Ex. C .

Dissatisfied with the payout, Guardian sued their insurance agent, Julio C. Alvarado, and Century in state court, complaining that the coverage provided to Guardian was insufficient to cover the cost of replacing the damaged property. *See* Mot. Ex. I. In the state court petition, Guardian brought a claim against Century for "negligent underwriting," *id.*, but later amended the petition to omit the claim against Century.

On June 26, 2023, Guardian served on Century a Chapter 38 "notice and demand letter" seeking damages and attorney's fees in the amount of $2,030,000. In the letter, Guardian argued that Century owed an additional $21,000 in payments to Guardian for "remaining coverages" under the policy, namely for "signage, increased cost of compliance, and electronic data and valuable papers." Taking issue with the scope of coverage provided by the policy, Guardian also alleged that Century had vastly undervalued the property when providing coverage limited at only "$635,000 for all four buildings located on the property." Mot. Ex. H (Guardian Demand Letter and Response). In response to the notice-and-demand letter, Century filed the present declaratory judgment action in which it seeks a judicial declaration that it owes nothing further under the policy.

After Century filed the present action in federal court, Guardian sued Century in a separate federal action on claims for fraud and fraud by non-disclosure, as well as on a contract claim urging that Century breached the policy. *See EC & SM Guerra, LLC v. Century Surety Company*, Case No. 5:24-cv-00585-JKP-RBF (Western District of Texas, May 30, 2024)

2

(Consolidated Case). The Court, upon motion by Century, *id*. Dkt. No. 6 (Mot. to Consolidate), consolidated Guardian's second-in-time lawsuit into the present first-filed Century declaratory-judgment case, *id*. Dkt. No. 11 (Transfer Order).

At issue now in the consolidated action are Guardian's claims for fraud and fraud by non-disclosure as well as for breach of the insurance policy based on Century's alleged failure for three additional categories of covered losses: (1) signs; (2) valuable papers; and (3) electronic data. Century, in turn, defends against the fraud-based and contract claims while also affirmatively seeking a declaratory judgment establishing that it owes nothing further to Guardian under the policy. Century's Motion for Summary Judgment seeks summary judgment on Guardian's claims. The motion doesn't request affirmative relief on the declaratory judgment claim raised by Century.

## Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant seeks summary judgment on a claim for which it bears the burden of proof at trial, the movant must show there is no there is no

3

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, a court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a

motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**Analysis**

**A.     Summary Judgment is Warranted on the Tort Claims.**

    **1.**     *The fraud and fraud by non-disclosure claims fail.* Guardian raises a claim for fraud under a theory that Century "falsely misrepresented the coverages available to plaintiff," Consolidated Case, Dkt. No. 1 (Compl.) ¶13, and a claim for fraud by non-disclosure under a theory that Century "deliberately failed to disclose material facts concerning the reduction and elimination of coverages afforded to [Guardian]" when it renewed the policy, *id.* ¶18. In essence, Guardian alleges Century defrauded Guardian by misrepresentation and omission when Guardian renewed its policy, because Century provided decreased coverage in comparison to the previous policy, and because that new coverage was insufficient to cover the full costs incurred from the fire. These fraud claims fail to present a triable issue, as discussed next.

    ***Guardian has no triable fraud claim.*** A claim of fraud requires the following elements: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re First Merit Bank*, 52 S.W.3d 749, 758 (Tex. 2001). Guardian's fraud claim fails on summary judgment because there is no disputed issue of material fact as to any material, false representation upon which Guardian could have reasonably relied.

Fraud claims rest on false representations, yet here it is unclear what false representation undergirds Guardian's fraud claim. The gravamen of Guardian's claim is that it was misled by Century when Century provided a policy with a limit insufficient to cover the full cost of the fire damages. The flaw in this fraud theory is that Century never promised a policy that would cover the full cost of the fire damages, instead, the undisputed evidence reflects that the policy Guardian received was precisely the policy it requested, including the limits to coverage.

Indeed, the uncontradicted evidence reflects Guardian knew the policy limits when it requested coverage from Century. Guardian's owner, Eliberto Guerra, signed an application for the insurance policy that included the limits Century ultimately imposed. *See* Resp. ¶ 1 & Consolidated Case, Compl. ¶ 9 (stating that on July 11, 2021, Guardian executed the agreement for policy number CCP999406 through their agent). In his deposition, Guerra repeatedly stated that he signed the application with the building insurance limit of $635,220.

> Q.   Mr. Alvarado presented to you with two different insurance proposals that we went through earlier. You signed the second one limiting your building insurance to $635,220, and you signed it. We saw your signature earlier, and you said that that was yours, so –
> A.   That's correct.

*See* Mot. Ex. G (Guerra Dep.) at 48:05-10.

> Q.   Okay. But you are acknowledging that you signed up for insurance limits, building limits of $635,220; is that right?
> A.   That's correct.
> Q.   And you received all of that in insurance proceeds?
> A.   That's correct.

*See* Guerra Dep. at 31:06-11. The signed application itself further reflects the indisputable fact that Guerra requested a policy with a $635,220 limit. *See* Mot. Ex. F, Century Surety 001574 (stating the building limit of $635,220) & 001580 (signature of Eliberto Guerra as "Guardian Angel Child Development Center"). For its part, Guardian makes no allegation that the

6

application signed by Guerra contained any false statement. Instead, it plainly reflects the policy limit of $635,220 that Century actually provided. Guardian's apparent theory that a policy with a stated limit can nonetheless amount to fraud is a nonstarter. Guardian has failed to identify any false statement by Century in connection with its fraud claim.

Guardian further fails to demonstrate actionable reliance by Century.  There can be no actionable reliance on any statement (or omission) by Century given that such reliance would plainly contradict the express terms of the application Guerra signed, which requested a policy limited to $635,220 in coverage. *See* Mot. Ex. F. As an insured, Guardian is charged with knowledge of the provisions of the policy. *See Pankow v. Colonial Life Ins. Co. of Tex.,* 932 S.W.2d 271, 277 (Tex. App.—Amarillo 1996, writ denied) (noting that an insured is charged with knowledge of the provisions of his policy); *E.R. Dupuis Concrete Co. v. Penn Mutual Life Ins. Co.,* 137 S.W.3d 311, 321–22 (Tex. App.—Beaumont 2004, no pet.) (holding that an insured could not complain about the failure to disclose information about an insurance policy that was available by reading the policy). A misrepresentation claim like Guardian's, premised on an alleged false representation or omission, cannot stand when Guardian is legally charged with knowledge of the true facts. *See Shindler v. Mid-Continent Life Ins. Co.,* 768 S.W.2d 331, 334 (Tex. App.—Houston [14th Dist.] 1989, no writ).

Moreover, any attempts by Guardian to claim actionable reliance on a contrary verbal statement would also fail—though it is unclear whether Guardian raises any such argument. Reliance on an alleged verbal statement as a predicate for fraud when that statement contradicts the express terms of a written agreement is not justified as a matter of law. *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th

Dist.] 2003, pet. denied). Here, the express terms of the agreement stated the policy limit of $635,220. *See* Mot. Ex. F.

> ***Guardian has no triable fraud by non-disclosure claim***. "Fraud by non-disclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it." *CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 353 (5th Cir. 2021) (citing *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019)). To state a claim for fraud by non-disclosure under Texas law, the plaintiff must allege that: "(1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the non-disclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury." *Bombardier*, 572 S.W.3d at 219-20.

A failure to disclose information cannot support a claim of fraud unless there is a duty to disclose the information. *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998). Silence may be equivalent to a false representation only when the circumstances impose a duty on the non-disclosing party to speak, and in the face of that duty the party remains silent. *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex. 2001). Whether such a duty exists is a question of law. *Id.*

Guardian's fraud by non-disclosure claim fails before the discussion even turns to whether there was a duty to disclose because, for the same reasons stated above, Guardian cannot as a matter of law establish actionable reliance on Century's purported nondisclosure. The policy and application plainly stated the coverage limits; it cannot be fraud when those limits are then enforced. *See supra* (citing and discussing *Pankow*, 932 S.W.2d at 277; *DRC Parts & Accessories, L.L.C.*, 112 S.W.3d at 858).

The lack of a duty to disclose is a second, independent reason why this claim fails. Guardian cannot demonstrate a duty to disclose owed by Century to Guardian, which Century could in any manner breach by failing to disclose information included in the application that Guardian signed and submitted to Century requesting coverage limited at $635,220. Indeed, it is hard even to understand what disclosure it is that Guardian feels it was owed, given that the policy limits imposed were indisputably disclosed to it when it requested the coverage and when it received the policy.

It appears that perhaps Guardian is endeavoring to allege fraud via the underwriting process, but that claim fails as well. *Bryce v. Unitrin Preferred Ins. Co.*, is illustrative. The Court in *Bryce* found no duty owed by the insurer to accurately underwrite a property, even when the plaintiffs requested coverage sufficient to cover a total loss. No. 03-08-00670-CV, 2010 WL 1253579 (Tex. App.—Austin Apr. 1, 2010, no pet.). The plaintiffs in *Bryce* owned an historic home with substantial custom features. They initially obtained an insurance policy for the home, and then 30 years later sought to renew coverage. In the underwriting process, the new policy wasn't increased to cover the increase in the home's value that occurred over the intervening 30 years. *Id*. at *1. A fire damaged the home, and the plaintiffs argued the insurer was liable for failing to properly underwrite and provide the requested total-loss recovery, and also for failing to disclose that the coverage provided wouldn't fully cover a total replacement.

The *Bryce* Court held that the insurer provided a policy in the amount the plaintiffs requested, and that the insurer owed no other duty beyond this. *Id*. at *6. The Court declined to impose or recognize a duty "on the part of either an agent or an insurance carrier to monitor an insured's policy in order to ensure that the requested coverage is adequate." *Id*. at *5. The plaintiffs' contention that even if they requested a certain level of coverage, the insurer

nevertheless owed a duty to inform them that the requested amount would be inadequate was also denied by the court; the court found no support in any Texas case for the premise that the insured had any such duty.

> The Bryces argue, however, that regardless of the amount of coverage they actually requested in their application, Unitrin and EEB had a duty to inform them that their insurance coverage was inadequate to cover the full replacement cost of the home. We find no support for this proposition in *May* or any other Texas case . . . .

*Id.*; *see also Pickens v. Tex. Farm Bureau Ins. Companies*, 836 S.W.2d 803, 805 (Tex. App.— Amarillo 1992, no writ) (finding no duty for insurance company's agent to change or extend insurance protection of his customer "merely because the agent has knowledge of the need for additional insurance of that customer" (citing *McCall v. Marshall,* 398 S.W.2d 106, 109 (Tex. 1965)).

Here, Guardian requested a policy with a policy building limit of $635,220. The undisputed evidence demonstrates that Century provided a policy in the amount requested. As discussed, Century had no duty to determine whether the requested policy was or was not insufficient, and even if it had, there was no duty to inform Guardian of any insufficient coverage. Summary judgment for Century is therefore warranted on Guardian's fraud-based claims.

      **2.** *There is no fiduciary relationship, and no evidence that a prior course of dealing could've created one*. Guardian argues that a duty to disclose was created by the parties' prior course of dealing and a purported fiduciary relationship between the parties. Guardian states in its original complaint in the consolidated case that "Plaintiff and Century had a fiduciary relationship as Century was plaintiff's insurance carrier under a contract of insurance. Plaintiff's relationship with Century involved a high degree of trust and plaintiff relied on Century to obtain

and maintain insurance coverage adequate to compensate plaintiff for a total loss." Consolidated

Case, Compl. ¶14.

These bare allegations and unsupported legal conclusions are insufficient to establish a

duty or demonstrate a triable issue on the existence of a duty in these circumstances. In *Pickens*,

the Court found no duty where there was no evidence that the insurer's agent previously met the

client's needs without discussion with the client. *Pickens*, 836 S.W.2d at 805 (citing *McCall v.

Marshall,* 398 S.W.2d 106, 109 (Tex.1965)). Here, the agent didn't work for Century, but instead

was Guardian's agent. And, in any event, Guardian points to no evidence of a prior course of

dealing wherein Century took care of Guardian's requests or needs without consulting it. There's

not even any evidence of any prior communications between Guardian and Century. Guardian

has not cited any evidence or alleged facts to show that Guardian had any direct communications

with Century at all. *See* Guerra Dep. 17:09-22 (explaining Guardian obtained the policy through

Guardian's agent).

Additionally, there is no general fiduciary duty between an insured and its insurer under

Texas Law.

> Proving the existence of a fiduciary relationship requires more than just evidence
> of prior dealings between the parties, and subjective trust by one party in another
> does not establish the requisite confidential relationship. *Caserotti v. State Farm
> Ins. Co*., 791 S.W.2d 561, 565 (Tex. App.—Dallas 1990, writ denied). There is no
> general fiduciary duty between an insurer and its insured. *Garrison* [*Contractors,
> Inc. v. Liberty Mut. Ins. Co.*], 927 S.W.2d [296,] at 301 [Tex. App.—El Paso
> 1996, *aff'd on other grounds* 966 S.W.2d 482 (Tex. 1998)]; *Caserotti*, 791
> S.W.2d at 565. To impose an informal fiduciary relationship in a business
> transaction, the requisite special relationship of trust and confidence must exist
> prior to, and apart from, the agreement made the basis of the suit.

*Wayne Duddlesten, Inc. v. Highland Ins. Co*., 110 S.W.3d 85, 96 (Tex. App.—Houston [1st

Dist.] 2003, pet. denied).

Guardian cites no cases, and the Court is not aware of any, that demonstrate how a fiduciary duty could be created in this situation. Guardian does not allege or provide evidence of the nature of any prior course of dealing or even prior communications between Guardian and Century. There is no fiduciary relationship or duty demonstrated here and no triable issue on the existence of a fiduciary relationship or duty.

**B.    Summary Judgment for Century is Warranted on the Contract Claims.**

At the June 23, 2025, hearing, Guardian acknowledged that there are three categories of contract claims at issue for a total of $21,000. For each claim, Guardian urges that the policy provides for an additional recovery to which it is entitled and that falls outside and beyond any applicable policy limit. In its motion, Century seeks an affirmative declaration that it does not owe any money under the policy for these asserted losses.

**1.**    *The contract claim seeking recovery for signs fails*. Although the policy addresses recovery for damage to signs, Century argues that any such recovery is included in the policy limit for the building coverage, and is not additional coverage beyond that limit:

> The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

> The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

*See* Mot. at 11 (citing Dkt. No. 19-12 (Ex. B to Mot.) at 23 (Section C - Limits of Insurance)). According to this argument, Century couldn't be liable for sign damage because it indisputably met the policy limit for the building. But this argument fails to connect the dots. Century fails to specifically identify policy text connecting "the applicable Limit of Insurance shown in the Declarations" with the building limit as opposed to some other limit. The Court declines to pour through the contract to figure this out itself. Century's citation in support of this argument is not to a policy provision but is instead to a declaration from a Century employee purportedly "with

knowledge of Guardian's policy and claim." Reply at 6 & n.7; Mot. at 11 & n.13. This is insufficient on summary judgment, as the declaration is merely one witness's legal conclusion on the meaning of the policy's text.

Century fares better with its argument that Guardian failed to provide proof of loss in connection with any claim for damaged signs. *See* Mot. at 10 ("Guardian has not provided the information required by the policy to support the $21,000 claimed in the demand letter."); Reply at 6-7. Under the "Duties in the Event of Loss or Damage" Section of the Policy, the Policy requires upon request from Century that the insured provide "complete inventories of the damaged and undamaged property." Dkt. No. 19-12 (Ex. B to Mot.) at 24-25. It further demands "quantities, costs, values and amount of loss claimed." *Id*. at 25. Further, the policy requires "a signed, sworn proof of loss containing the information we request . . . ." *Id*. Century argues that Guardian never provided this information and points out that Guardian, in response to this argument, "did not allege or produce evidence that Guardian submitted proof of loss." Reply at 6 & n.6. Guardian did point to a single photo, but that photo indisputably fails to provide the needed information. Guardian also didn't argue waiver of, or substantial compliance with, this provision in its response. *See, e.g.*, *City of Spearman v. Tex. Mun. League Intergovernmental Risk Pool*, 601 S.W.3d 72, 75 (Tex. App.—Amarillo 2020, pet. denied) (failure to provide proof of loss bars recovery on policy).

> Instead, Guardian pointed to a discovery response submitted in litigation in which Guardian's lawyer described the items generally and said that Guerra had knowledge of the items. Guardian's response to Interrogatory No. 12 did not "identify the manner and date when any of these documents were provided to century" as requested by the interrogatory. Guardian's reliance on an interrogatory answer that only identifies categories of lost items amounts to an admission Guardian did not submit a proper proof of loss on this element of its claim.

Reply at n.6. The Court agrees. In response to this summary judgement argument, Guardian fails to rebut Century's argument and evidence in support.

      **2.**    *Recovery for valuable papers and records and electronic data is not available to Guardian*. As for the remaining two categories of outside-the-policy-limits recovery, for papers and records as well as electronic data, Century notes that there simply is no evidence that Guardian suffered any kind of recoverable loss under these provisions. In essence, the same infirmity that infects its claims to recover for signage also infects these claims. This is supported by the declaration provided by Century:

> Regarding valuable papers and records, Guardian failed to provide factual support of valuable papers and records. They provided a blurry photograph of pictures hanging on a wall, which would have been included in the limits paid in full for business personal property. Century repeatedly asked the policyholder if they would be submitting additional support for a claim for valuable papers and records and none was provided.

*See* Decl. of Kathy Bost at 4. Regarding electronic data, Guardian has provided no factual support to substantiate a claim for the cost of replacing or restoring lost data. *See id.* ¶14; *see also* Mot. at ¶ 40 ("The policy also allows for additional coverage provided for electronic data up to $2,500 for the cost to replace or restore electronic data which has been destroyed or corrupted by a covered cause of loss. Guardian offered nothing to substantiate a claim for the cost of replacing or restoring the data."). Again, a proof of loss is required upon request, and Century has provided sufficient unrebutted evidence that such proof was requested but never provided. Indeed, counsel candidly conceded at the hearing on the motion that Guardian offered no affidavit or other evidence to meet its non-movant's burden, once movant Century provided the above-mentioned uncontroverted Bost declaration in support of its position. *See* Hearing, June 23, 2025. Century is therefore entitled to summary judgment on these issues as well, and it is

also entitled to a declaration that it owes no further money under the policy for claims in either of these categories.

**3.**    *Declaratory judgment.* Century has paid the policy in full, and Guardian has not offered support for additional coverage. As such, summary judgment should be granted declaring Century's entire policy limit has been paid and there is nothing more owed under the policy.

### Conclusion and Recommendation

For the reasons discussed above, it is recommended that Plaintiff's Motion for Summary Judgment, Dkt. No. 19, be **GRANTED**. The Court should enter a take-nothing judgment on all claims asserted by Guardian and issue a declaration that Century owes no further payment under the policy.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the

objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

   **IT IS SO ORDERED**.

   SIGNED this 21st day of August, 2025.

              _____

              RICHARD B.  FARRER
              UNITED STATES MAGISTRATE JUDGE